**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

In re:

BAREFOOT COTTAGES DEVELOPMENT                    CASE NO.:  09- 50089-LMK
COMPANY, LLC,                                     CHAPTER:  11


    Debtor.

_____/

## ORDER ON MOTION TO DETERMINE OWNERSHIP OF FUNDS

THIS MATTER is before the Court on the Motion of Clark, Partington, Hart & Hart, P.A. ("Clark Partington"), to Determine the Ownership of a Supersedeas Cash Bond (the "Bond"). Having reviewed the motion and the file, and having conducted a hearing thereon on May 29, 2009, I took under advisement the issue of whether the Debtor/Debtor-in-Possession (the "Debtor") had acquired a property interest in the Bond, such that the Bond is now property of the bankruptcy estate. For the reasons stated more fully herein, I hold that Debtor did not acquire a sufficient property interest in the Bond and accordingly the funds now belong to Clark Partington.

## BACKGROUND

The Debtor, Barefoot Cottages Development Company, LLC, is the owner and developer of Barefoot Cottages, a platted subdivision located in Port St. Joe, Florida, consisting of one hundred forty (140) residential lots including ninety two (92) beach cottages. Eighty (80) of the cottages to be constructed were pre-sold by the developer. The site improvements and the beach cottages were constructed and paid for from the purchaser's earnest money deposits and two bank loans. Upon completion of construction, the purchasers were notified, and only seventeen (17) closed upon their contracts to purchase. The Debtor, through Clark Partington, filed suits against many of the remaining purchasers seeking specific performance of the contracts.

Before a specific performance suit was filed against contract purchasers Donald and Pamela Sellazzo, the Sellazzos filed a suit for declaratory judgment seeking to cancel the purchase contract and receive a return of their earnest money deposits, interest and fees, based on the claim that the contract Clark Partington reviewed or prepared for the Debtor, failed to conform to the disclosures or other requirements found at § 720.401, Florida Statutes (2004). This state court action, from which the Bond at issue here arose, was styled *Pamela and Donald Sellazzo v. Barefoot Cottages Development Company, LLC,* Okaloosa County Circuit Court Case No. 2007-CA-2451-S. On February 20, 2008, the Circuit Court entered final summary judgment for the Sellazzos finding that the purchase contract the Debtor used, which was the same as all of the others, failed to comply with § 720.401. The Summary Judgment adjudicated the contract to be void and judgment was entered requiring the Debtor to pay $47,490.00, representing the amount of the Sellazzo's earnest money deposit.

After the Circuit Court denied the Debtor's Motion to reconsider the entry of Summary Judgment, a Notice of Appeal was filed on May 21, 2008. A stay of execution of the money judgment pending review was obtained by the deposit of a check into the registry of the court from the operating account of Clark Partington, pursuant to Fla. R. App. Pro. 9.310(b). Simultaneously, Fla. R. App. Pro. 9.900 Form (i) Civil Supersedeas Bond was filed. In pertinent part, the form 9.900(i) provided that, " [the Debtor], has deposited into the registry of [the Circuit Court] the sum of $57,937.80, representing the principal amount of the judgment entered in this case plus twice the statutory rate of interest on judgments," and, "if [the Debtor] shall satisfy any money judgment contained in the final summary judgment in full, including, if allowed by law, costs, interest and attorneys fees, and damages for delay in the event said appeal is dismissed or said judgment is affirmed, then this obligation shall be null and void: otherwise to remain in full force and effect." The form was signed by two attorneys for the Debtor, Louis K. Rosenbloum

("Rosenboum"), attorney for the Debtor on Appeal, and Jesse W. Rigby, a lawyer for Clark Partington who represented the Debtor in the state court case.

Clark Partington, although not a named party, agreed to fund the costs associated with the appeal. Clark Partington's interest and role in the appeal is exemplified by the agreement for the retention of appellate counsel, Rosenbloum, which stated, inter alia: (1) that Clark Partington would be responsible for the payment of Rosenbloum's invoices and that the Debtor would only be secondarily liable for the payment of the invoices; (2) that the Debtor would cooperate with Clark Partington to recover attorney's fees and costs in the event the final judgment was vacated or reversed; (3) that the Debtor would reimburse Clark Partington in that event for any portion of attorney fees not recovered by the Appellees; and (4) that the Debtor would not have any obligation to reimburse Clark Partington for any of its payments to Rosenbloum unless the final judgment was reversed or vacated.  At an early hearing in this case on injunctive relief, the Debtor also informed the Court that Clark Partington had advised it to retain counsel to sue Clark Partington for malpractice associated with the deficient contracts, and the malpractice cause of action was listed as an asset on the Debtor's schedule B.

Before the Appeal was decided, the Debtor settled with the Sellazzos and the appeal was dismissed on January 26, 2009 pursuant to Fla. R. App. Pro. 9.350(A), Dismissal of Causes When Settled.  However, the Bond was not released until after the hearing on this Motion. The Debtor filed its voluntary Chapter 11 petition on February 19, 2009.  The Bond was released to the Debtor's bankruptcy attorney's trust account pending this determination.

Clark Partington contends that the Bond posted on the Debtor's behalf never belonged to the Debtor, and that accordingly it is entitled to the Bond.  The Debtor contends that the Bond is property of the bankruptcy estate because Clark Partington's posting of the Bond, without an explicit agreement not to seek repayment from the Debtor, constituted a loan which created a right to payment if the bond was not drawn to pay the Sellazzo's judgment. The Debtor argues that the

right to payment qualifies as a "claim" under 11 U.S.C. § 101(5), and Clark Partington is there-

fore a "Creditor" under 11 U.S.C. §101(10) entitled to be treated as all other like-situated credi-

tors in the bankruptcy proceeding.

## **DISCUSSION**

This case requires me to determine whether the Debtor, and therefore the bankruptcy estate,

obtained a property interest in the Bond.  In making this determination, I am guided by cases dis-

cussing and interpreting the "earmarking doctrine."

The "earmarking doctrine" is most often recognized as a defense to avoidance actions under

11 U.S.C. § 547.  The doctrine is generally asserted by a transferee of property to negate the

threshold requirement that the debtor have had an interest in the property alleged to have been

preferentially transferred. Where the debtor is deemed not to have possessed an interest in the

property transferred, the property would not have been property of the bankruptcy estate under

11 U.S.C. § 541 but for the transfer, and a preference action cannot be sustained. *Begier v. IRS*,

496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46, 56 (1990).  In Collier on Bankruptcy –

15th Edition Rev., the "earmarking doctrine" is described as follows:

> When a third person makes a loan to a debtor specifically to enable that debtor to
> satisfy the claim of a designated creditor, the proceeds never become part of the
> debtor's assets, and therefore no preference is created. The rule is the same regard-
> less of whether the proceeds of the loan are transferred directly by the lender to
> the creditor or are paid to the debtor with the understanding that they will be paid
> to the creditor in satisfaction of his claim, so long as the proceeds are clearly
> "earmarked."

5-547 Collier on Bankruptcy-15th Edition Rev. P 547.03.  The earmarking doctrine does not ap-

ply when the debtor obtains the ability to control and designate the recipient of the funds:

> A payment by a debtor with borrowed money, however, may constitute a prefe-
> rence when the loan so used was not made upon the condition that it should be
> applied to the particular creditor to whom it was paid over. Similarly, a payment
> made by a third party to a creditor of the debtor may likewise amount to a prefe-
> rential transfer when the payment represents a loan by the third party to the debtor

and the debtor, rather than the lender, designates the creditor to be paid and controls the application of the loan.

*Id.*

The Eleventh Circuit has noted the existence of the earmarking doctrine, but declined to apply the doctrine under the facts of the cases presented.  First, in *Bank of Martin County v. Leasing Services Corp. (In re Air Conditioning, Inc.)*, 845 F.2d 293 (11th Cir. 1988), cert denied., *First Interstate Credit Alliance Inc. v. American Bank of Martin County*, 488 U.S. 993, 109 S.Ct. 558, 102 L.Ed.2d 584 (1988), the Eleventh Circuit noted that the debtor may have been able to prove that he did not own the funds at issue under the basic premise of the earmarking doctrine, that "when a third party makes a loan to a debtor which enables the debtor to satisfy a creditor's claim, the proceeds of the loan do not become property of the estate." *Bank of Martin County*, 845 F.2d at 297.  Recently, the Eleventh Circuit recognized but did not apply the doctrine in *Bank of America N.A. v. Mukamai (In re Egidi)*, 2009 WL 1684601 (11th Cir).  In *Bank of America* the debtor directed the pre-petition payment of a credit card by balance transfers and credit card advances drawn on other credit cards.  Because the line of credit extended to the debtor was directed to be paid to the credit card by the debtor, and not the lender, the line of credit could have been used to pay other creditors or to purchase other assets that would have been part of the estate and available to other creditors, and the earmarking doctrine was inapplicable.

Many other courts have applied the earmarking doctrine when facts demonstrate that the lender dictated the recipient of the funds that would not have otherwise been provided to the debtor but for the agreement to pay the funds to the designated recipient, and where the funds were in fact so paid.  See e.g. *Coral Petroleum, Inc. v. Banque Paribas-London (In re Coral Petroleum, Inc.)*, 797 F.2d 1351 (5th Cir. 1986) (funds pledged by solvent indirect offshore subsidiary of debtor to re-pay debtor's loan never came into the general control of the debtor and were deemed to be earmarked funds); *Tolz v. Barnett Bank of South Florida, N.A.. (In re Safe-T-*

*Brake)*, 162 B.R. 359 (Bankr S.D. Fla. 1993) (debtor did not have dispositive control over funds secured creditor wire transferred to lien claimant pursuant to closing of loan and were deemed to be earmarked funds);  *In re Hood*, 118 B.R. 417 (Bankr. D. S.C. 1990) (checks written by third-party, cashed by debtor, and provided to creditor as cashier's checks to satisfy antecedent debts of debtor and to prevent levy on inventory after judgment were deemed to be earmarked funds).

The earmarking doctrine has mostly been discussed as a defense to an action to recover an avoidable preference, but the doctrine has not been solely limited to that context.  In *Price Chopper Supermarkets, Inc.*, 40 B.R. 816 (Bankr. Cal. 1984), which was cited with approval by the Eleventh Circuit in *Bank of Martin County*, 845 F.2d at 297, the earmarking doctrine applied to a post-petition transfer.  The trustee in that case was unable to set aside a post-petition transfer of stock because the earmarking doctrine applied and the stock was not deemed to be property of the bankruptcy estate.  Preference litigation focuses upon whether there has been a diminution of the estate.  Where a transfer does not diminish the estate because the debtor does not have a sufficient interest in that property, the estate would not have succeeded to the property if the property were in the possession of the debtor on the date the petition was filed. Post-petition transfer cases, like *Price Chopper Supermarkets*, also address "the critical question of whether there was a transfer of property which could have been a part of the bankruptcy estate available for distribution to all creditors." *Price Chopper Supermarkets*, 40 B.R. at 820.  Accordingly, the rationale in the cases that refer to the interest of the debtor in property in preference and post-petition transfer actions appear to be equally applicable to a determination of property of the estate under 11 U.S.C. § 541. *See also Beiger,* 496 U.S. at 59 (noting that "property of the estate" under  § 541(a)(1) serves as the postpetition analog to 11 U.S.C. § 547(b)'s "property of the debtor"; and FN3 clarifies that the 1984 amendment to §547(b) substitution of "an interest of the debtor in property for "property of the debtor" was a "clarifying change" that makes the current language

in § 547 of "an interest of the debtor in property" and the older language of "property of the deb-

tor" coextensive with "interests of the debtor in property" as that term is used in §541(a)(1)).

In this Case the funds used to secure the Bond were posted in the form of a check directly

from Clark Partington's operating account into the registry of the Circuit Court.  The Debtor did

not at any time possess the funds or have any dispositive control over the recipient of the funds,

and the Debtor did not post any money or collateral of its own to secure the Bond.  Unlike the

control the Debtor had over the credit lines at issue in *Bank of America*, the Debtor in this case

could not have diverted the funds to pay any other creditor or use the funds to obtain any other

assets that would have become property of the estate.  Where a payment is made directly by the

third party to the creditor, the existence of an explicit agreement between the new lender and the

Debtor that the new funds will be used to pay specified antecedent debt is inapplicable. *In re

Bohlen Enterprises, Ltd.*, 859 F.2d 561, 566 (8th Cir. 1988).  The facts and circumstances indi-

cate that the funds were posted for the particular purpose of ensuring payment to the Sellazzos

and delaying and potentially avoiding the execution on the Debtor's property.  Ensuring payment

to the Sellazzos by the third-party did not diminish the bankruptcy estate.  Accordingly, at the

time the funds were posted into the Court registry they were "earmarked funds" that were not

property of the Debtor, but property of Clark Partington.  Whatever nominal interest the Debtor

obtained in the funds at this time was only in trust for Clark Partington and not part of the bank-

ruptcy estate.

Hypothetically, if the Circuit Court had released the funds to Clark Partington after the set-

tlement of the appeal but within the ninety (90) day preference period, the Debtor would not

have been able to prevail in an action to recover the funds from Clark Partington as an avoidable

preference.  The funds were posted for the particular purpose of ensuring payment to the Sellaz-

zos. The settlement agreement that did not utilize the Bond effectively eliminated the Debtor's

debt to the Sellazzos and the particular purpose for which the funds had been provided had been

extinguished.  Payment of the funds back to Clark Partington would have been in accordance with the intention of the parties evidenced on the record, and it would not result in a diminution of the estate, because the Debtor never obtained an interest in the funds at the time they were posted by Clark Partington.   Allowing the estate to recover the funds here would expand the property rights of the Debtor solely by way of filing the bankruptcy petition, and unjustly enrich the Debtor.

Having determined that the funds, if in fact loaned to the Debtor, would have constituted earmarked funds, I find it unnecessary to evaluate in detail Clark Partington's contention that the Debtor never obtained any ownership interest in the Bond.  That argument appears to be well grounded in established principles outlined in cases exploring whether a letter of credit extended by a bank to ensure payment of an obligation incurred by the debtor would constitute property of the estate.   Like the Bond in this case, the purpose of a letter of credit is to shift to a third-party the risk taken by a creditor in an underlying obligation owed by the debtor.  The overwhelming majority of cases have held that the letter of credit and its proceeds do not constitute property of the debtor's estate, but collateral which has been pledged by a debtor to secure the letter of credit is property of the estate.  *See Bank of Martin County,* 845 F.2d at 296; *Matter of Compton Corp.*, 831 F.2d 586 (5th Cir. 1987); *Matter of Val Decker Packing Co.*, 61 B.R. 831 (Bankr. S.D. Ohio 1986).   Because the Debtor in this case did not provide any of its own funds or collateral to secure the Bond, no estate assets appear to have been used.  The Bond, like the letters of credit in the aforementioned cases, does not appear to be property of the estate.  Likewise repayment of the letter of credit from a third-party to the bank, like the payment of the Bond to Clark Partington after the settlement that occurred pre-petition, would be a transfer that did not involve estate property. For all of the foregoing reasons, it is hereby,

ORDERED and ADJUDGED  that the Motion of Clark, Partington, Hart & Hart, P.A. to Determine the Ownership of a Supersedeas Cash Bond GRANTED, and the Debtor's Attorney

shall turnover the funds in its trust account to Clark Partington within fifteen (15) days of the date of this Order.

DONE and ORDERED in Tallahassee, Florida this 28th day of July, 2009.

LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc:  all parties in interest