UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

In re:

BAREFOOT COTTAGES DEVELOPMENT
COMPANY, LLC,

CASE NO.: 09-50089-LMK
CHAPTER: 11

    Debtor.
_____/

### ORDER ON APPLICATION FOR COMPENSATION OF DAVID P. HEALY

This MATTER is before the Court on the Application for Compensation of David P. Healy as Special Counsel for the Debtor-in-Possession (hereinafter "Debtor") (the "Application," Doc. 267). The Application pursuant to 11 U.S.C. § 330, seeks compensation for David P. Healy's post-petition fees and costs associated three state court cases. For the reasons stated more fully herein I find that the applicant shall be awarded $110,845.42.

### FACTS

At the time this case was commenced, the Debtor was embroiled in litigation. David P. Healy had appeared on behalf of the Debtor, its guarantors, and other persons associated with the Barefoot Cottages Development, in four separate pre-petition law suits. After commencement of this case, the Debtor filed an Application to Employ David P. Healy with respect to these state court law suits, specifically including: (1) A legal malpractice errors and omissions action styled *Barefoot Cottages Development Company v. Clark, Partington, Hart &Hart, P.A.,* Okaloosa County Circuit Court Case No. 2008 CA 004579 (the "CPH litigation"); (2) An action styled *Barefoot Cottages Development Company et. al, v. Whitney National Bank et. al.,* Okaloosa County Circuit Court Case No. 2008 CA 004708, which was consolidated with *Whitney National Bank v. Curtis H. Gwin, et. al.*, Okaloosa County Circuit Court Case No. 2008 CA 005039 (collectively the "Whitney Litigation"); and (3) A matter styled *William T. Kennington et. al. v. Barefoot Cot-*

1

*tages Development Company et. al.*, Gulf County Circuit Court Case No. 2008 CA. 000474 (the "Kennington Litigation").

The "CPH litigation" was a malpractice suit against Clark Partington Hart & Hart, P.A. ("CPH"), for alleged errors and omissions in the drafting of purchase contracts. The compensation requested by David Healy in conjunction with this suit has not been opposed. The "Whitney Litigation" was originally two suits. The first was a declaratory judgment action by the Debtor and its guarantors, against Whitney and various other persons intertwined in the land transaction underlying the construction loan and the project development. This suit sought a determination as to whether Whitney or the Debtor and it's guarantors were in breach of the loan documents. The second was an action by Whitney National Bank ("Whitney") to enforce the guarantees of Curtis H. Gwin and Howard Ray Shoults, managers of the two entities holding the equity interests in the Debtor. These two suits were consolidated due to judicial economy and similarity of parties and issues. The "Kennington Litigation" was an action by claimants alleging they are entitled to units free and clear of Whitney's mortgage.

The terms of the Application to Employ David Healy provided that he was to "give the Debtor legal advice regarding the prosecution or defense of the Lawsuits, to coordinate with bankruptcy counsel and to perform all other legal services for the Debtor which may be necessary to those tasks." After having initially granted the Application to Employ, Whitney filed a Motion to Reconsider (Doc. 68), alleging, among other things, that Mr. Healy's representation of the guarantors and the third-party plaintiffs in their action to recover property free and clear of Whitney's mortgage conflicted with his responsibilities as special counsel to the Debtor to maximize the recovery for the benefit of the Debtor and the Estate, and that his employment should be precluded. A hearing was held on the Motion to Reconsider on May 29, 2009. At that hearing it was determined that as to the Whitney Litigation, a conflict of interest did not exist at that

time, despite Mr. Healy's representation of parties with different ultimate interests and agendas, because the legal posture of the cases and the fact that identical arguments and defenses were being presented on behalf of the Debtor and it's guarantors.  A conflict also was not found with regard to the Kennington litigation because I found that at that time the objective of the parties in that suit were also completely in line with the Debtor's objectives.

The Application for Compensation before the court requests total compensation of $111,065.42, consisting of: (1) $89,380.23, for the CPH Litigation; (2) $21,465.19 for the Whitney Litigation; and (3) $220.00 for the Kennington Litigation.  Whitney filed a response in opposition to the Application for Compensation objecting to the compensation requested for both the Whitney litigation and the Kennington Litigation, stating that those suits did not involve post-petition proceeding by or affecting the Debtor.  Whitney did not object to the compensation requested for the legal malpractice errors and omissions lawsuit against CPH.   David Healy filed a Response to Whitney's response, alleging that the services he rendered in the Whitney litigation were necessary and beneficial to the representation of the Debtor's interests, because, inter alia, the suits involved a judicial declaration as to whether Whitney was in prior material breach of the loan agreement and a declaration of the amount of principal and interest Whitney was entitled to claim.  In addition, Healy's response noted that although Whitney's post-petition amended state court summary judgment motion was nominally against the guarantors only, the alleged undisputed facts would have had a binding effect on the Debtor's rights, and therefore had to be extensively opposed.  Whitney then filed a supplemental response objecting the Healy's allegedly "chameleon-like" role in representing alternatively the guarantors, the debtor, or the management of the debtor, and stating that because the amount of the WNB claim was to be determined in the bankruptcy court, any activity in the WNB state court did not affect the Deb-

tor, but rather the management, Curtis H. Gwin and H. Ray Shoults and their personal exposure to liability on their guarantees.

## DISCUSSION

The starting point for any discussion concerning a professional's fee is the statutory framework set out in 11 U.S.C. §§ 327-330.  The Debtor-in-Possession, charged with all of the rights, powers, and duties of the trustee by operation of § 1107(a), "with the court's approval, may employ, for a specified purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." § 327(e). Under § 330 reasonable compensation may be awarded for the actual and necessary services that the professional person employed under § 327(e) provides, based on the nature, the extent, and the value of such services, considering the time spent on such services, and the cost of comparable services *Miller Buckfire & Co. v. Citation Corp. (In re Citation Corp.)*, 493 F.3d 1313 (11th Cir. 2007). The court may award reimbursement of actual and necessary expenses under § 330 (a)(1)(B).

In determining the amount of reasonable compensation to be awarded, the court may consider as a relevant factor, "whether the services were reasonably necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case…" § 330(a)(3)(C).  The services need not have been ultimately successful; however, viewed objectively the services must have been reasonably likely to benefit the estate or be necessary to the administration of a case. *In re Ames Dept. Stores, Inc.*, 76 F.3d 66. 71 (2d Cir 1996) (discussing the proscription of compensation not reasonably likely to benefit the estate under § 330(a)(4)(ii)(I)-(II)).

Whitney National Bank does not take issue with the reasonableness of the amount of the compensation requested, but rather, only as to whether the post-petition work performed in the Whitney and Kennington litigation was compensable from the estate. Whitney contends that the post-petition fees are more properly compensable from the guarantors individually. Accordingly, the issue before the Court is whether the services of Mr. Healy in the Whitney Litigation and Kennington litigation, were actual and necessary services that were reasonably likely to benefit the estate or necessary to the administration of the case.

As noted above, the Whitney litigation originally consisted of two law suits. One was brought by the Debtor and its guarantors pre-petition, seeking a declaratory judgment as to whether Whitney or the Debtor were in breach of the loan documents, and the second suit was brought by Whitney seeking to enforce the guarantees of Curtis H. Gwin and H. Ray Shoults. The post-petition activity in the Whitney Litigation has been mostly centered upon Whitney's pursuit of summary judgment against the guarantors.[1] The basic thrust of Whitney's renewed summary judgment motion was that the guarantors are unconditionally obligated to pay Whitney due to the contractual language in the loan documents which stated the guarantors obligations were to be exclusive of any defenses the debtor may have against Whitney (Applicant's Exhibit 12 p. 6 paragraph 12-13), and alternatively and significantly *that Whitney was not in prior material breach of the loan documents* (Applicant's Exhibit 12 paragraph 14-17). The response to the Renewed Motion for Summary Judgment filed David Healy on behalf of the guarantors essentially argued that Whitney was and is in prior material breach, thereby excusing the Debtor and its guarantors from further payment or performance (Applicant's Exhibit 13 p. 18), and that

---

[1] David P. Healy's Exhibits admitted at the June 18, 2010, Hearing on the Application for Compensation showed post-petition activity Whitney's Motion for Summary Judgment (Exhibit 11), Whitney's renewed Motion for Summary Judgment (Exhibit 12), the response of David Healy on behalf of the Guarantors (Exhibit 13), the Court's Order Denying Entry of Summary Judgment (Exhibit 14), Whitney's Motion for Reconsideration / Clarification (Exhibit 15), the Court's Order on Reconsideration (Exhibit 16), and time records of David Healy (Exhibit 1).

Whitney's calculations of the interest due was incorrect, and its affiant thereto was not properly qualified (Applicant's Exhibit 13 p. 24-30). By opposing the Renewed Summary Judgment motion and only arguing the issue of prior material breach and the amount of the interest due, Mr. Healy provided the same legal argument on the same legal issue that was the heart of the Debtor's position in its suit against Whitney. The circuit court denied summary judgment and found that there were "material issues of fact as to all points raised by Whitney National Bank." An order on Whitney's ensuing Motion for Reconsideration and/or Clarification showed only that no disputed issues of fact existed as to whether Whitney owned and held both the appropriate loan documents, that the Guarantors and the Debtor had executed and delivered them to Whitney, that demand was made and not paid, and as to the underlying principal indebtedness on the respective loans.

The key issue is now whether Mr. Healy's representation of the guarantors in opposition to the summary judgment motion was an actual and necessary service that was reasonably likely to benefit the estate or be necessary to the administration of the case. Whitney's position today appears to be that any determination by the Circuit Court could not have affected the Debtor or the bankruptcy estate due to the automatic stay and the fact that the summary judgment motion was brought only against the guarantors, despite the fact that the Circuit Court was asked to rule that no material facts exist and that Whitney was not in prior material breach of the loan documents.

The simple fact is that by bringing forth the legal issue that was at the heart of the Debtor's offensive action against Whitney, Whitney's summary judgment motion, though nominally against the guarantors, did affect both the Debtor and the bankruptcy estate. The Debtor's claim in its consolidated, offensive, and not-stayed declaratory suit against Whitney, that Whitney was in prior material breach of the loan documents, was a reasonable claim aimed at protecting the Debtor's assets and decreasing the Debtor's indebtedness. While an adverse decision on this is-

6

sue against guarantors would not have had an actual collateral estoppel effect on the Debtor due to the fact that the Debtor was not a named party to the summary judgment motion, a finding that material facts were not in dispute and that Whitney had not violated the loan documents would have had a practical and detrimental effect upon the bankruptcy estate.  To re-state, if the state court judge had ruled that no material facts were in dispute and that Whitney was not in prior material breach of the loan documents, the Debtor's claim in its consolidated declaratory judgment suit against Whitney, would have been harmed since the same judge would have faced the same legal issue under the same facts, in the consolidated case. Had Mr. Healy responded to the summary judgment motion with arguments personal to the guarantors and different from the interests of the Debtor, or had Mr. Healy extensively opposed the portion of the summary judgment motion which argued that the guarantors were bound by the terms of the guarantee language in the contract, his hours for that work would not have been compensable from the estate. However, since Mr. Healy only argued the issues of whether Whitney was in prior material breach, and the amount of the interest due, the fees by Mr. Healy are compensable from the estate. Under the circumstances presented, the arguments offered by Mr. Healy on behalf of the Debtor, though nominally in the name of the guarantors, were objectively reasonable and were actual and necessary services that were within the scope of the duties of the debtor-in-possession in maintaining its position so as to preserve its arguments to reduce the liabilities of the bankruptcy estate. See 3-330 Collier on Bankruptcy P3.330.03[1][b][ii] (2010) (noting services rendered in the preservation of the estate or in the performance of the debtor-in-possession's duties, such as investigation and litigation directed at recovering or collecting assets, or reducing liabilities is compensable from the estate).  Accordingly, David Healy is entitled to be compensated for all of the fees requested in the Whitney Litigation.

In the Kennington Litigation, David Healy was retained in order to seek a judicial declaration as to whether four cottages units were owned free and clear of Whitney Bank's lien, and whether they must be released without the payment of additional consideration to the Debtor. In the hearing on the Motion to Reconsider Mr. Healy's Application to be Employed, the Debtor contended that this litigation was in the estate's interest because it would conceivably reduce the amount of the plaintiff's unsecured claims against the estate if successful. Whitney vigorously opposed stating, among other things, that it was far from clear whether any funds would be available to pay unsecured creditors at all. Due to the fact that virtually no work was conducted post-petition on the Kennington litigation, and the fact that David Healy and Whitney agreed at the hearing to waive the $220.00 requested in conjunction with the Kennington Litigation, I will deny the compensation requested for this portion of the fee application without further comment. Accordingly, it is hereby

ORDERED and ADJUDGED that the Application for Compensation of David P. Healy (Doc. 267) is GRANTED in part, and DENIED in part. David P. Healy shall be awarded $110,845.42, and the compensation in the amount of $220.00 for the Kennington Litigation is DENIED.

DONE and ORDERED in Tallahassee, Florida this 6th day of July, 2010.

_____
LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc: all parties in interest